**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- >
LIFENG CHEN, holder of at least fifty percent of
outstanding shares of NEW TREND APPAREL,
INC., SUNNING EAGLE HOLDINGS
LIMITED, ZHEJIANG MEIBANG TEXTILE CO.
LTD., and ZHEJIANG DATANG IMPORT &
EXPORT CO. LTD.,

                    Plaintiffs,

      -against-

NEW TREND APPAREL, INC.,
KISUM LOUIE a/k/a/ "TOMMY K. LOUIE,"
JOHN DOE, JANE DOE, fictitiously named parties,
true name(s) unknown,, and COMPANY ABC,
COMPANY XYZ, fictitiously named business
entities, true name(s) unknown.

                  Defendants.
-------------------------------------------------------------- x

**COMPLAINT**

       LIFENG CHEN, holder of fifty percent of outstanding shares of NEW TREND

APPAREL, INC., SUNNING EAGLE HOLDINGS LIMITED,    ZHEJIANG MEIBANG

TEXTILE CO. LTD., and ZHEJIANG DATANG IMPORT & EXPORT CO. LTD.,

("PLAINTIFFS"), for their Complaint in this action against Defendants, NEW TREND

APPAREL, INC. ("NTA"), and  KISUM LOUIE a/k/a "TOMMY K. LOUIE" ("Louie"), alleges

as follows:

<u>THE PARTIES</u>

1.   Plaintiff, Lifeng Chen, is a citizen of China, holding at least 50% of outstanding shares of

      Defendant NEW TREND APPAREL, INC. The percentage of his shares is to be

      determined by the Court.

2. Mr. Chen is the owner of Plaintiffs Sunning Eagle Holding Limited, Plaintiff Zhejiang Meibang Textile Co. Ltd., and Plaintiff Zhejiang Datang Import & Export Co. Ltd.

3. Plaintiff, SUNNING EAGLE HOLDINGS LIMITED, is a foreign corporation with its principal place of business in Road Town, Tortola, British Virgin Islands, maintaining its corporate headquarters and principal place of business at the same.

4. Plaintiff, ZHEJIANG MEIBANG TEXTILE CO. LTD., is a foreign corporation with its principal place of business in Zhejiang Province, China, maintaining its corporate headquarters and principal place of business at Office No. 8, The Fifth Xingye Road, Chengxi Economic Development Zone, Zhuji City, Zhejiang Province, China.

5. Plaintiff, ZHEJIANG DATANG IMPORT & EXPORT CO. LTD., is a foreign corporation with its principal place of business in No. 9 Genta Road, Zhuji, Zhejiang Province, China.

6. Defendant NEW TREND APPAREL, INC. is a New York corporation with its principal place of business at 1407 Broadway #305, New York, New York 10018.

7. Upon information and belief, Defendant KISUM LOUIE a/k/a "TOMMY K. LOUIE" is an individual residing in the State of New York.

8. Upon information and belief, Defendant John Doe is an individual, true name unknown at this time, affiliated with the Defendants.

9. Upon information and belief, Defendant Jane Doe is an individual, true name unknown at this time, affiliated with the Defendants.

10. Upon information and belief, Defendant COMPANY ABC is a business entity, true name unknown at this time, affiliated with the Defendants.

11. Upon information and belief, Defendant COMPANY XYZ is a business entity, true name unknown at this time, affiliated with the Defendants.

## JURISDICTION AND VENUE

12. Pursuant to 28 USC §1332, this court has subject matter jurisdiction over this action because Plaintiffs are diverse from defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper pursuant to 28 USC §1391, as defendant NTA is incorporated under the laws of the State of New York, and maintains a place of active business in this Southern District of New York.

## FACTUAL ALLEGATIONS

14. On or about January 11, 2009, Plaintiff Sunning Eagle Holdings Limited ("Sunning"), represented by its owner Lifeng Chen, and defendant, NTA, represented by defendant, Louie, entered into an agreement titled "Letter of Intent," under which the parties agreed to develop NTA's business together. (See "**Exhibit A**")

15. Pursuant to the Letter of Intent, Plaintiffs would be responsible for supplying manufactured goods to NTA from Zhejiang Meibang Textile Co. Ltd. ("Zhejiang Meibang").

16. Pursuant to an oral agreement between the parties, Plaintiff Zhejiang Datang Import & Export Co. Ltd, also owned by Lifeng Chen, would also be a supplier for NTA.

17. The parties agreed that Plaintiffs would send two employees from China to oversee the operation of the company. Pursuant to the Letter of Intent, Jing Ying Cai, an employee of Meibang, was sent to NTA's headquarters to oversee the accounting records and sales of

the merchandise. NTA sponsored Ms. Cai's immigration status so that she could legally work for NTA.

18. Pursuant to the parties' agreement, Louie would hold the office of the President but he would merely function as a sales person to conduct sales for the company due to his connections with the garment industry.

19. Prior to entering into the Letter of Intent, pursuant to an oral agreement, each party was to invest one million dollars capital in NTA in exchange of 50% of the shares. Louie represented that he was not able to provide cash but had inventory valued at about $300,000 at that time and also his warehouse and office for which he already paid rent for three years. It was agreed that Louie would invest in NTA the sales proceeds for his $300,000 inventory when it was sold, the office and warehouse, and his share of NTA's future profits. It was further agreed that before Louie invested one million dollars in total, he would not be entitled to any shareholder rights.

20. Right after execution of letter of intent, Plaintiffs requested to check NTA's books and records for the purpose of evaluating NTA's financial condition. However, Louie refused Plaintiffs' request, claiming that before Plaintiffs invested the money, Plaintiffs were not entitled to check NTA's books and records.

21. On or about February 26, 2009, pursuant to the Letter of Intent, Sunning paid one million dollars in exchange for 50% of NTA's shares. (**Exhibit B**)

22. Plaintiffs again requested to check NTA's books and records. At this time, Louie replied that he already sold his $300,000 inventory and had used all the money.

23. Mr. Chen became concerned and demanded Louie to make his capital contribution, Louie replied that since Chen was sending his employees to work at NTA to control the operation of the business, there was nothing Mr. Chen needed to worry about.

24. Plaintiffs soon found out that Louie had only made a 3-month deposit for the office and warehouse. His previous representation that he had paid rent for three years was clearly false.

25. Thereafter, the shareholders of NTA have never elected a board of directors. Upon information and belief, NTA has never had a board of directors.

26. Shortly thereafter, it became apparent that Louie did not really wish for Sunning or any of its agents or employees to have access to NTA's records.  Defendants disregarded the agreement with Plaintiffs and completely controlled NTA's sales, inventory, and books and records. In fact, none of Plaintiffs agents observed the accounting, books, and/or records of NTA since the execution of the Letter of Intent.

27. Plaintiffs determined that Defendants were not complying with the Letter of Intent. Upon information and belief, Defendants falsified NTA's books and records in order to cover up Defendants' illegal conduct that siphoned off Plaintiffs' investment and inventory. For instance, according to the information provided by Louie, the business expenses of NTA, as such a small company, exceeded one million dollars in only five months in 2009.

28. Due to Defendants' suspicious activities, Plaintiffs expressed their concerns about the management and operation of NTA. On or about May 18, 2009, as a renewed sign of trust, Sunning and NTA agreed to sign a Supplementary Agreement to the Letter of Intent, indicating that any activities between the parties (including moving any goods)

would require confirmation from both parties.  Moreover, payment for any and all good

would be transmitted to the designated bank account. (See "**Exhibit C**")

29. Shortly after signing the Supplementary Agreement, Defendants stopped cooperating

with Plaintiffs. Defendants hid the sales proceeds, denied Plaintiffs' access to the books

and records, and refused to deposit sales proceeds to the designated bank account. As a

result, Plaintiffs were left in the dark regarding the company's financial condition.

30. On or about July 2009, Jing Ying Cai, aware of growing problems at NTA, contacted Mr.

Lifeng Chen, President of Sunning, Zhejiang Meibang, and Zhejiang Datang, seeking

help. As such, Plaintiffs sent two more employees to NTA to assist Mr. Cai in overseeing

the operation of NTA.

31. Louie grew infuriated. On July 16, 2009, Louie informed Mr. Chen that he wanted to

terminate the letter of Intent and the Supplementary Agreement because he was unhappy

with Plaintiffs' involvement in NTA's business, particularly with the procedure of

handling the capital and goods.

32. In return, Louie promised to allow Plaintiffs to sell and handle NTA's goods by signing a

Power of Attorney that allowed Plaintiffs to sell the remaining inventory, the shipments

on the way to NTA from China, and the merchandise already manufactured in China for

NTA.

33. On or about September of 2009, Sunning had found a potential buyer for the goods held

by NTA.

34. On or about October of 2009, Ms. Cai went to the warehouse to inspect the goods but

was refused entry.  It was later discovered by Ms. Cai that the goods in question were

transferred from the warehouse to an unknown location.

35. On or about March of 2010, Louie informed Plaintiffs that he would not return the goods unless Sunning first relinquished its 50% shares in NTA. Prior to July 16, 2009, NTA had sold some merchandise supplied by Plaintiffs for about $316,000. Louie also demanded Plaintiffs to relinquish this $316,000 payment, claiming that he had spent all of it.

36. In an attempt to coerce and threaten Plaintiffs, Louie threatened that he would have Ms. Cai's immigration status terminated if Plaintiffs did not agree to terminate the Letter of Intent and Supplementary Agreement. Despite Defendants' threats, Plaintiffs rejected his unreasonable requests.

37. Pursuant to the agreement between the parties, in addition to seamless underwear, socks, and shirts, NTA is also required to place the orders of regular underwear and pants with Plaintiffs. However, Defendants bypassed Plaintiffs and ordered regular underwear and pants from other vendors. Under Louie's instruction, his son took exclusive control over these orders and Plaintiffs were excluded from these transactions.

38. Plaintiffs have made multiple shipments of inventory to Defendants valued at over two million dollars.

39. As of today, Defendants have failed to pay for a large portion of inventory supplied by Plaintiffs, the value of which is estimated to be not less than one million dollars.

40. Defendants have also secretly transferred a significant amount of inventory elsewhere valued at approximately $400,000. Upon information and belief, Defendants have sold the inventory and siphoned off the proceeds.

41. Beginning in August of 2010, Louie discontinued Ms. Cai's salary payments.

42. At the beginning of January, 2011, Mr. Chen came to the United States to discuss various problems with Louie. On January 6, 2011, Mr. Chen went to Louie's office only to find that no one was working there and the office was locked.

43. On January 7, Mr. Chen and Ms. Cai went to Louie's office again and found someone unknown to him working in the office, who informed them that they would not be able to find Louie and asked them to leave a message.

44. Ms. Cai worked in a separate office. When Ms. Cai and Mr. Chen tried to access her office, they discovered that the locks had been changed.

45. On the same day, Plaintiffs found that all the samples and office equipment were removed by Defendants. It appears that Defendants are planning to run off with the money and goods belonged to Plaintiffs.

46. On January 9, 2011, Ms. Cai demanded payment for her salary, to which Louie responded that NTA was to shut down and that no reparations would be made. To maintain her legal status, it is required that Ms. Cai be paid as a full time employee under the immigration law. As a result, Ms. Cai has become extremely concerned about her immigration status.

47. During the business relationship with Plaintiffs, Defendants owned and operated several companies directly competing with NTA, including Miss Juli Apparel, New Trend Corporation, and Paris Angel Apparel.

48. Upon information and belief, Defendants have diverted NTA's assets to his other companies.

49. Defendants have also misappropriated NTA's corporate business opportunities for his personal gain.

50. Louie, on behalf of the Defendants, has agreed to repay the amount owed to Plaintiffs multiple times in 2009 and 2010, though he refused to sign any promissory note or document stating same. However, Defendants breached these promises and failed to make any payment.

51. As of the date of this Complaint, Plaintiffs have suffered damages in an amount to be determined at trial but estimated to be not less than ten million dollars.

52. NTA has not followed the proper corporate formalities. For instance, it has failed to hold both and initial and then annual meetings of shareholders. No board of directors was elected after Plaintiff Sunning became a shareholder. Upon information and belief, no board of directors has ever been elected.

53. Upon information and belief, Louie has also commingled his personal funds with company funds.

54. Louie has dominated the business practices of NTA so completely that the corporation is merely an instrumentality of his person or "alter ego".

55. There is such unity of interest and ownership that the separate personalities of the corporation and the owner no longer exist.

56. Therefore, individual defendant, Louie, as the alter egos of defendant corporation, NTA, have been, conducting, managing, and controlling the affairs of defendant corporation since its formation, as though it were individual defendant's own business, and individual defendant has used defendant corporation for the purpose of defrauding plaintiffs, and others similarly situated, as set forth in this complaint.

57. To adhere to the doctrine of the corporate entity would promote injustice or protect fraud.

58. Louie has used NTA to carry out unlawful acts of fraud and limit himself from liability, in effect defeating the "ends of justice". The corporate arrangement was a sham, used to defeat justice, to perpetrate fraud and evade contractual responsibility.

59. As of today, Louie has not made any capital investment in NTA as he promised but has siphoned off all Plaintiffs' assets, including the cash and inventory invested by Plaintiffs.

60. Pursuant to the parties' agreement, Louie is not a shareholder and is not entitled to any shareholder rights because he has failed to make the required one million dollars capital contribution.

61. When the parties first negotiated the agreement to develop NTA, Louie represented to Plaintiffs that the gross sales would be approximately fifteen million dollars per year and the net profits would be about 25% of this amount.

COUNT ONE<br>(BREACH OF CONTRACT)

62. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

63. Plaintiffs bring this claim for breaches of the Letter of Intent and Supplementary Agreement by Defendants.

64. The Agreement and the Supplement are valid, binding agreements between the parties.

65. Pursuant to the agreements, Plaintiffs were authorized to send their employees to oversee the operation of NTA, including its accounting and inventory management. However, Defendants breached the agreement by completely taking control of the operation of NTA.

66. Also pursuant to the agreements, in addition to seamless underwear, socks, and shirts, NTA is also required to place the orders of regular underwear and pants with Plaintiffs.

However, Defendants bypassed Plaintiffs and ordered regular underwear and pants from other vendors. Under Louie's instruction, his son took exclusive control over these orders and Plaintiffs were excluded from these transactions.

67. Defendants also breached the contract by denying Plaintiffs' right to know the financial condition of NTA.

68. Defendants also breached the contract by refusing to share the company's profits.

69. In material breach of the Letter of Intent and the Supplementary Agreement, NTA has failed to comply with the terms under the Letter of Intent and the Supplementary Agreement, and is therefore in breach of the aforementioned agreements.

70. As a result of the aforesaid breach, Plaintiffs have been damaged.

COUNT TWO<br>(BREACH OF CONTRACT)

71. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

72. Louie breached the agreement with Plaintiffs that he would also invest one million dollars capital in NTA.

73. By reason thereof, Plaintiffs have incurred and continued to incur damages.

COUNT THREE<br>(BREACH OF CONTRACT)

74. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

75. In 2009 and 2010, Defendants agreed to pay the amount owed to Plaintiffs multiple times.

76. Louie breached the agreement and never indeed paid Plaintiffs.

77. By reason thereof, Plaintiffs have incurred and continued to incur damages.

COUNT FOURTH<br>(FRAUD)

78. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

79. As evidenced by the Stock Transfer Agreement, when Plaintiffs purchased the shares of NTA, Defendants represented to Plaintiffs that the shares were owned by Louie "free and clear of any liens, encumbrances and security interests."

80. The representation of a material fact is false.

81. Plaintiffs reasonably relied on Defendants' misrepresentation, paid one million dollars, and supplied a large volume of inventory.

82. Plaintiffs' reliance on Defendants' misrepresentations caused damages.

COUNT FIVE<br>(FRAUD)

83. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

84. When the parties engaged in negotiations regarding their future business relationship, Louie misrepresented that he wanted to do business together with Plaintiffs while his true intention was to defraud Plaintiffs for money.

85. To induce Plaintiffs to invest in NTA, Louie made various other misrepresentations, including but not limited to the following: (1) he would also invest one million dollars in NTA; (2) he would allow Plaintiffs to control the operation of NTA, including its accounting and inventory; (3) he had paid the rent for NTA's office and warehouse for three years; (4) NTA would order both the seamless products and regular products from

Plaintiffs; and (5) the yearly sales would be about 15 million dollars and the net profits would be about 25%.

86. The aforesaid misrepresentations of material facts are false.

87. Plaintiffs reasonably relied on Defendants misrepresentations and incurred damages.

COUNT SIX
(BREACH OF FIDUCIARY DUTY)

88. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

89. Plaintiffs assert that Defendant Louie is not a shareholder and is not entitled to any shareholder rights because Louie failed to make any capital contribution as he agreed. However, if the Court determines that Louie is a shareholder, Louie has breached the fiduciary duty owed to the corporation and Mr. Chen.

90. Louie is expected to act in the best interest of NTA with the highest degree of loyalty, trust, good faith, integrity, honesty, and fairness.

91. Louie breached this duty by engaging in conduct for his own personal gains to the detriment of NTA and Plaintiffs.

92. By reason thereof, Plaintiffs have incurred and continued to incur damages.

COUNT SEVEN
(MISAPPROPRIATION OF CORPORATE OPPORTUNITY)

93. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

94. Louie has misappropriated corporate opportunity for his personal gains by owning and operating several competitor companies that engaged in the same business. In doing so, Louie has taken corporate opportunity since the activity engaged in is reasonably incident

to the corporations present and/or prospective business and the corporation has the capacity to enter into such business.

95. Louie diverted NTA's business opportunities to his other companies for his own personal gains.

96. By reason thereof, Plaintiffs have incurred and continue to incur damages.

COUNT EIGHT
(EQUITABLE ACCOUNTING)

97. Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

98. It is well established that an action at law against one 50% shareholder by another shareholder arising out of a claim of the corporation requires a full accounting.

99. The equitable remedy of accounting is an essential preliminary step to establish the flow of money involved in many cash transactions.

100.     By reason thereof, Plaintiffs have incurred and continue to incur damages.

COUNT NINE
(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

101.     Plaintiffs reallege and incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

102.     There was an implied covenant of good faith and fair dealing between Plaintiffs and Defendants resulting from an implied contract formed between the parties.

103.     For the foregoing reasons, Defendants breached the implied covenant of good faith and fair dealing by engaging in misconduct and defeating the expectations Plaintiffs reasonably understood and relied on.

104.     By reason thereof, Plaintiffs have incurred and continue to incur damages.

<u>COUNT TEN</u>
(UNJUST ENRICHMENT)

105.      Plaintiffs reallege and incorporate by reference the allegations set forth in the

preceding paragraphs as if set forth at length herein.

106.      Defendants siphoned off Plaintiffs' investment and a large volume of inventory.

107.      Defendants are not entitled to the money and inventory and thus have been

unjustly enriched.

108.      By reason thereof, Plaintiffs have incurred and continue to incur damages.

<u>COUNT ELEVEN</u>
(BUSINESS CORPORATION LAW §720)

109.      Plaintiffs reallege and incorporate by reference the allegations set forth in the

preceding paragraphs as if set forth at length herein.

110.      Plaintiffs bring this action against Defendant Louie for misconduct pursuant to

Business Corporation Law § 720.

111.      Plaintiffs demands that Louie account for his official misconduct in the

following cases:

        (A)      The neglect of, or failure to perform, or other violation of Defendant Louie's

        duties in the management and disposition of corporate assets committed to the

        charge of Defendant as detailed at length in the Complaint herein and in Causes

        of Action 1-10; and

        (B) The acquisition by Defendants, transfer to others, loss or waste of   corporate

        assets due to any neglect of and failure to perform, or other violation of Defendants'

        duties as detailed at length Complaint herein and in Causes of Action 1-10; and

(C) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness as detailed at length in the Complaint herein and in Causes of Action 1-10; and

(D) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there is sufficient evidence that it will be made as detailed at length in the Complaint herein and in Causes of Action 1-10.

112.    By reason thereof, Plaintiff have incurred and continued to incur damages.

**WHEREFORE**, the plaintiffs, LIFENG CHEN, SUNNING EAGLE HOLDINGS LIMITED, ZHEJIANG MEIBANG TEXTILE CO. LTD., and ZHEJIANG DATANG IMPORT & EXPORT CO. LTD., demands judgment against Defendants, NEW TREND APPAREL, INC., and KISUM LOUIE a/k/a/ "TOMMY K. LOUIE," as follows:

(a)    Declare that Defendant Louie was not and is not a shareholder of NTA at all material times;

(b)    Adjust the rights and interests of the parties;

(c)    Appoint Lifeng Chen receiver;

(d)    An order requiring Defendants to produce business records to the extent that said business records allow Plaintiffs to determine the amount of business opportunities diverted to Defendant Louie's other companies;

(e)    An order for accounting of all business records, including but not limited to proceeds, profits, assets and all related cash flow of NTA to which Defendants wrongfully misappropriated;

(f)    Award Plaintiffs compensatory damages in an amount to be determined at the trial but estimated to be not less than ten million dollars ($10,000,000.00);

(g)     Award Plaintiffs punitive damages in an amount to be determined by the Court;

(h)     Award Plaintiffs prejudgment interest;

(i)     Award Plaintiffs costs of suit, including attorney's fees;

(j)     Grant such other and further relief that the Court deems proper and just.


By : Heng Wang, Esq. (HW 0786)
WONG, WONG & ASSOCIATES, P.C.
150 Broadway, Suite 1588
New York, NY 10038
Attorneys for Plaintiffs


Dated:     January 14, 2011
           New York, NY

## **VERIFICATION**

STATE OF NEW YORK     )
COUNTY OF NEW YORK     )     ss.:

     I am the Plaintiff, the President of Plaintiff Sunning Eagle Holdings Limited, the President of Plaintiff Zhejiang Meibang Textile Co. Ltd., and the President of Plaintiff Zhejiang Datang Import & Export Co. Ltd. The foregoing Complaint has been explained to me in Mandarin, a language that I fully understand, and I know the contents thereof. The contents of the Complaint are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                     _____
                                     Lifeng Chen

Subscribed and sworn to before me
on this _____ day of January, 2011

_____
Notary public

HENG WANG
NOTARY PUBLIC - STATE OF NEW YORK
NO. 02WA6206365
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 18, 20__

EXHIBIT A

# 合作意向书
## Letter of intent

日期 DATE:2009-1-11

甲 方 PARTY A:      SUNNING EAGLE HOLDINGS LIMITED

代 表 Representative：  Mr. CHEN LIFENG

乙    方 PARTY B:   NEW TREND APPAREL INC.

代 表 Representative：  Mr. TOMMY K. LOUIE

为了开发美洲市场，扩大市场的份额，双方经友好协商，达成以下合作：

In order to develop the market in US and extend market shares, through friendly negotiations, both parties reached the following agreement on cooperation.

1、甲、乙双方各自在美国成立公司或者甲方以50%现金或者实物入股乙方在美的公司，甲、乙双方各持该公司的50%股份。双方对于公司的财务情况有知情权，公司的一切开支和利润平分，一年结一次。

Each party can establish its own company in U.S.A. Or by cash or real object. PARTY A buys 50% of the shares of NEW TREND APPAREL INC. to be its shareholder as PARTY B. Both parties have the right to know the financial condition. Each party shares half of the company's expenses and profits. The period of settlement is one year.

2、甲方负责货源，以浙江美邦纺织有限公司生产的无缝内衣、袜子、衬衣、有缝内衣及裤裤为主产品。甲方以最低的价格供货，价格条款为FOB中国主要港口。如市场有低于甲方价时，双方均有权进最低价货物。

Party A takes responsibility of the supply of the goods. The main goods are the seamless underwears, socks, shirts, normal underwears and trousers which are specialized by ZHEJIANG MEIBANG TEXITLE CO., LTD Party A sells the goods at the best price (FOB the main port of CHINA). Both of the two parties have the right to import the goods whose price is lower than Party A's price.

3、合作经营只要有利，不限于甲方提供的产品，但需要双方共同决策。单方决策的需自负盈亏，并承担全部相应的开支及费用。

The business scope is not limited to the goods supplied by Party A. All businesses with profits are allowed, but have to be decided by both parties. In the case of the business decided by one part, this party should share the lost or profit itself and bear all the relevant expenses.

4、注册商标成功后，该商标的所有权和使用权为双方共同拥有，不得单方所用。

On success of trademark registration, its ownership and usufruct are kept by both parties; No party can use or own it unilaterally.

5、公司成立后不得向外担保，也不得单方面举债。

After the establishment of the company, it cannot guarantee for others or float a loan unilaterally.

6、法人由乙方担任，甲乙双方共同经营。

It is Party B as the artificial person of the company. The two parties operate the business together.

7、经营活动中如有垫资赊销而出现货款损失，哪方同意签发由该方的股份做损失抵偿。

The lost due to sale on account is borne by the party who agrees to. This party should compensate the lost from its shares.

8、货款支付方式：30%定金，70%见提单传真件或乙方每10天向甲方指定的账号支付货款销甲款。

The payment terms is 30% advanced payment, 70% against the fax of the B/L. Or Party B remits the sales amount on 10th, 20th, 30th of every month to the account named by Party A.

9、现有人员不变。甲方派2个人在乙方处共同经销，并控制甲方货物及资金的安全性。业务员工资$2000/月，佣金为销售额的2%

The stuff keeps the same. Party A will authorize two staff to work with Party B in USA to control the safety of goods and capitals. The salary of the salesman is $2000/month and the commission is 2% of the saleroom

10、甲方和乙方应当确保获得的所有资料严格保密，在未得到对方的许可的情况下，不得将技术资料、发展资料和客户资料等泄露给第三方。

The two parties shall ensure that all the obtained data are in strict security: without the permission of the other party, none of the technical information, data on development and customer information should be disclosed to any third party.

11、甲、乙双方就该合同未尽事宜（或特定事宜）经共同协商，达成补充协议条款经双方确认视为有效。

Any supplementary provision to this letter, which is approved by the two parties, is valid.

本意向书自签字之日起生效。

The letter of intent shall come into effect from the date of signing.


Party A：甲方                              Party B： 乙方

SUNNING EAGLE HOLDINGS LIMTTED            NEW TREND APPAREL INC.

Representative(代表)：                      Representative(代表)：

Date（日期）： 2009-01-11                   Date（日期）：2009-01-11

Signature/seal 签字：                       Signature/seal 签字：

EXHIBIT B

東亞銀行

05)5-8)103888

26/02/09-14:21:22                                      PRTHZU-9393-000001

---

----------------------- Instance Type and Transmission ---------------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status    : Network Ack
Priority/Delivery    : Normal
Message Input Reference         : 1418 090226BEASCNSHAHZU5764833870
----------------------- Message Header ---------------------
Swift Input                 : FIN 103 Single Customer Credt Transfer
Sender   : BEASCNSHHZU
          BANK OF EAST ASIA (CHINA) LIMITED, THE
          HANGZHOU CN
Receiver : CHASUS33XXX
          JPMORGAN CHASE BANK, N.A.
          NEW YORK,NY US
MUR : FT325896
----------------------- Message Text ---------------------
 20: Sender's Reference
     OR31000900083
23B: Bank Operation Code
     CRED
32A: Val Dte/Curr/Interbnk Settld Amt
     Date      : 26 February 2009
     Currency   : USD (US DOLLAR)
     Amount      :      #1,000,000 #
50K: Ordering Customer-Name & Address
     /OSA131001014812400
     SUNNING EAGLE HOLDINGS LIMITED
     NO.8 XINGYE RD JINGJIKAIFAQU CN.
53A: Sender's Correspondent - BIC
     /793616632
     CHASUS33
     JPMORGAN CHASE BANK, N.A.
     NEW YORK,NY  US
57A: Account With Institution - BIC
     BEAKUS33
     BANK OF EAST ASIA(USA) NA
     NEW YORK,NY  US
 59: Beneficiary Customer-Name & Addr
     /1100001158
     NEW TREND APPAREL INC
 70: Remittance Information
     CHEN LI FENG'S PERSONAL
     INVESTMENT
     FUND.
71A: Details of Charges
     OUR
----------------------- Message Trailer ---------------------
{CHK:F7322B362D79}
PKI Signature: MAC-Equivalent

Exhibit C

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

1

**NEW TREND APPAREL INC.**

**TOTAL AUTHORIZED ISSUE**
200 SHARES WITHOUT PAR VALUE
COMMON STOCK

See Reverse for
Certain Definitions

— 100 —

**This is to Certify that** _____ CHEN LI FENG _____ _____ is the owner of

ONE HUNDRED ( 100 ) _____ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the

Corporation by the holder hereof in person or by duly authorized Attorney upon

surrender of this Certificate properly endorsed.

**Witness,** the seal of the Corporation and the signatures of its duly authorized officers.

**Dated** _____

_____
SECRETARY

_____
PRESIDENT

# EXHIBIT C

## 合作意向书补充协议
## Supplementary Agreement to the letter of intent

第一次补充
The 1st supplement
DATE: 2009-05-18

甲　方　Party A:　　SUNNING EAGLE HOLDINGS LIMITED
代表 Representative：　MR.CHEN LIFENG
乙　方　Party B:　　NEW TREND APPAREL INC.
代　表 Representative：　Mr. TOMMY K. LOUIE

本着互利互惠的原则，经甲、乙双方友好协商，双方就 2009 年 1 月 11 日共同签署的《合作意向书》中未尽事宜签订以下补充协议。
　　In line with the mutually beneficial interaction and the equal cooperation's principle, Both Party A and Party B here entered into a supplementary agreement to the "Letter of intent" signed on January 11, 2009 after the friendly negotiation.

　　1、乙方一收到每次销售的货款，其合同金额必须立刻汇入东亚银行（中国）有限公司，且只有甲方有权调拨此项存款。利润部分单独设账，用于日常的开支，支出由乙方和蔡金英共同签字后生效。每笔支出费用由蔡金英提前一天向浙江羡邦纺织有限公司申报，经浙江美邦纺织有限公司财务总监审批后方可支付。
On receipt of the payment of each sale, Party B shall deposit its contract amount of the sale into The Bank of East Asia (China) Limited without delay. It is only Party A has the rights to allocate and transfer this bank deposit. To open a separate account for the profits and the current expenditure, and it will be come into effect once signed both by Party B and Ms. CAI JINYING CAI. Every expenditure payment shall be applied to ZHEJIANG MEIBANG TEXTILE CO.LTD one day ahead by Miss. CAI JINYING, and it cannot be paid till the application is examined and approved by the financial manager of ZHEJIANG MEIBANG TEXTILE CO.LTD.

　　2、如果乙方无法在货物清关后一个月内销售完此批货物，乙方应该向甲方支付月息。月息为 1%的未销售货物货款。
In case that the party B cannot sale out all the goods within one month after its customs clearance date, Party B shall pay the monthly interests, which is 1% of the amount of the revolved goods, to Party A.

　　3、乙方可推行低薪高佣的用人制度，但新雇员在 3 个月试用期的周薪由甲、乙双方共同决定．乙方必须要求应聘者在应聘时提交就职计划和原就职信息，并对该应聘者在前一就职公司的诚信度等情况进行评估．甲、乙双方共同决策雇用和解雇员工事宜，对于无法胜任的新雇员，应及时辞退。
The Party B can carry out a low-wage & high-commission personnel system. The wage of the fresh man within the three- month probation period shall be decided by both

parties. Party B shall demand the installment proposal and the information of his former job from the applicants to evaluate his credibility through his former employee. It is the two parties to make a decision together on the haring and firing. For those who is unequal to the job should be discharged timely.

4、乙方对奕邦公司所下订单和对外订单都必须按合同执行。如需修改，必须经过甲乙双方的同意。如不能按时发货，工厂应赔偿 10%的违约金。
Every order placed by Party B including the order to ZHE JIANG MEIBANG TEXTILE CO.LTD and external order should strictly abide by the contract. Any modification should approved by other parties. If the factory can not delivery the goods on schedule, it shall compensate 10% of the total amount as a penalty.

5、由乙方和蔡金英确认后，所有的货物才能安排进、出仓。进、出仓的数据必须即时发浙江美邦纺织有限公司留档。
All the goods cannot be go in and out of the warehouse only till the confirmed by Part B and Miss. CAI JINYING. And all the details of in and out of the warehouse should be sent to ZHEJIANG MEIBANG TEXTILE CO., LTD. for file on real-time.

6、本协议如中英文意思有出入，以中文为准。
Please as per the Chinese content if there is some discrepancy in both English and Chinese.

7、补充协议生效自双方签字后设生效。本协议生效后，即成为《合作意向书》不可分割的组成部分，与《合作意向书》具有同等的法律效力。除本协议中明确所作修改的条款之外，原意向书的其余部分应完全继续有效。
The supplementary agreement shall come into effect from the date of signings. It is the inalienable part of The Letter of Intent and has the same validity. Except the amendments on this agreement, the rest parts of The Letter of Intent remain valid.

Party A：甲方

SUNNING EAGLE HOLDINGS LIMTTED

Representative(代表)：

Date（日期）：  2009-05-18

Signature/seal 签字：

Party B：乙方

NEW TREND APPAREL INC.

Representative(代表)：

Date（日期）：2009-05-18

Signature/seal 签字：