```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
LIFENG CHEN et al.,             :
                Plaintiffs,     :   REPORT & RECOMMENDATION
                                :
        -against-               :   11 Civ. 324 (GBD) (MHD)
                                :
NEW TREND APPAREL, INC.
et al.,                         :
                Defendants.     :
-------------------------------x
HANA FINANCIAL, INC.,           :
                Intervenor
                Plaintiff,      :
        -against-               :
NEW TREND APPAREL, INC.         :
et al.,
                                :
                Third-Party
                Defendants.     :
-------------------------------x
```

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

By letter dated February 26, 2015, counsel for plaintiff Lifeng Chen and his related companies (collectively "the Chen plaintiffs") advised the court that his clients had entered into a settlement of their claims against defendant New Trend Apparel, Inc., the various New Trend-related companies, and the principals of New Trend -- Mr. Kisum Louie and Ms. Byunglim Louie (collectively, "the New Trend defendants"). (See Feb. 26, 2015

1

letter to the Court from Heng Wang, Esq. [docket no. 328]). As it transpired, the settlement contemplated entry of judgment on claims by two of the Chen corporate plaintiffs (Zhejiang Meibang Textile Co. and Zhejiang Datang Import & Export Co.) against all four New Trend-related defendant companies.[1] (See Ex. A to Declaration of Samuel Weissman dated Mar. 20, 2015 ("Wiessman Decl.") [docket no. 341]). The parties also agreed, as part of the settlement, that New Trend would assign to the Chen plaintiffs "all claims, demands, and cause[s] of action" held by New Trend against the two remaining defendants in this case -- New York Clothing Group, Inc. ("NYCG") and Ms. Nina Chang -- "in connection with goods delivered and unpaid for". (See "Assignment of a Cla[i]m for Damages" [Ex. A to Feb. 26, 2015 letter to the Court from Heng Wang, Esq.]). The assignment instrument further stated that "the Assignee may . . . prosecute, collect, settle, compromise and grant releases on said claims as it in its sole discretion deems advisable." (Id.).

The Chen plaintiffs submitted to the court for its review both the Consent Judgment embodying these terms and the separately documented Assignment. Both documents had been signed by counsel

---

[1] The claim by Zhejiang Meibang and the proposed judgment were said to be for $589,533.00, and the claim by Zhejiang Datang and the corresponding judgment were stated to be for $226,270.00. (Proposed Consent Judgment at p. 1 & ¶¶ 1-2).

for the Chen plaintiffs and for the New Trend defendants.

This submission drew a prompt response from intervenor plaintiff Hana Financial, Inc., which had a factoring agreement with New Trend and has been held to have a priority interest in New Trend assets by virtue of New Trend's default in repaying a loan of $500,000.00. See Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 421, 425-26, 466 (S.D.N.Y. 2014). Hana objected to the proposed settlement and urged the court not to approve it and not to sign the proposed Consent Judgment. (Mar. 4, 2015 letter to the Court from Michael J. Sheppeard, Esq. [docket no. 331]). In opposition, Hana cited an anti-assignment provision in the factoring agreement, and argued as well that the assignment of New Trend's claims was barred by the court's prior ruling, on summary judgment, that Hana had a priority claim on assets of New Trend. (Id. at 2-4).[2]

---

[2] Hana also argued that the agreement and consented-to judgment were suspect because both the proposed judgment and the instrument of assignment were signed only by outside counsel for the Chen plaintiffs and the New Trend defendants and not by the clients. (Mar. 4, 2015 letter to the Court from Michael J. Sheppeard, Esq. at p. 2). Counsel for the New Trend defendants subsequently proffered to the court a stipulation of settlement, which embodied the terms reflected in the Consent Judgment and in the Assignment, and that stipulation was signed by both Mr. Chen and the principals of the New Trend corporate defendants -- Mr. and Mrs. Louie. (Weissman Decl. Ex. A).

We have since been gifted with several rounds of papers, by counsel for the Chen plaintiffs and the New Trend defendants in favor of the settlement terms (Mar. 12 & 19, 2015 letters from Heng Wang, Esq. [docket nos. 334, 340]; Mar. 12, 2015 letter from Samuel Weissman, Esq. [docket no. 335]; Weissman Decl.), and from Hana's counsel in opposition. (Mar. 27, 2015 Decl. of Michael J. Sheppeard, Esq. ("Sheppeard Decl.") [docket no. 344]). We now assess the propriety of the court entering the proposed consent judgment in view of the record in this case, including prior rulings by the court.

## ANALYSIS

As noted, the settlement agreement, which is embodied in a stipulation signed by Mr. Chen and by Mr. and Mrs. Louie (Weissman Decl. Ex. A) encompasses two principal forms of relief for the Chen plaintiffs. First, the New Trend corporate defendants consent to entry of judgment against them and on behalf of two of the Chen plaintiff corporations in amounts that total $815,803.00. (Id. p. 2, ¶¶ 1-2). Second, New Trend undertakes to assign to the Chen plaintiffs all claims that it may have against Ms. Chang and her company, NYCG. (Id. ¶ 5). Hana does not articulate any objection to the first part of the settlement -- in which the New Trend

4

defendants consent to judgment on behalf of two Chen-related companies -- but does object to the assignment.[3] (See Mar. 4, 2015 letter from Michael J. Sheppeard, Esq.). In doing so Hana principally asserts (1) that the assignment is barred by paragraph 11 of its factoring agreement with New Trend and (2) that it would be contrary to prior concessions by New Trend and rulings of this court to the effect that Hana has a perfected security interest in the inventory of New Trend and that this interest is superior to any claim by the Chen plaintiffs. (Id. at 2-4; Sheppeard Decl. ¶¶ 33-43).

We first address the anti-assignment provision of the factoring agreement. The provision invoked by Hana is found in section 11, which states in pertinent part:

> <u>This agreement</u> may not be changed or terminated orally; it constitutes the entire agreement between Client and Hana and will be binding upon Client's and Hana's respective successors and assigns, but <u>may not be assigned by Client without Hana's prior written consent.</u>

(Mar. 4 letter from Michael J. Sheppeard, Esq., Ex. 1 [docket no. 331-1] at § 11) (emphasis added).

---

[3] In the concluding paragraph of Hana's counsel's March 27 declaration, he does request that the court deny "in its entirety" the relief sought by the Chen plaintiffs and the New Trend defendants. (Sheppeard Decl. ¶ 44).

The explicit terms of the cited provision prevent New Trend from assigning the factoring agreement without permission by Hana. The question posed by Hana's argument on this point is whether the proposed assignment by New Trend to the Chen parties of their claims against Ms. Chang and NYCG constitutes an assignment of the factoring agreement. We conclude that it does not.

We start with a brief recapitulation of the events that led to New Trend's claims against Ms. Chang and NYCG.[4] At the time that Hana successfully sought intervention in this lawsuit, it did so to protect its claim to recovery from New Trend's inventory under the terms of its factoring agreement and in light of New Trend's default on its guarantee of a short-term $500,000.00 loan that Hana had provided to a related entity known as JCM Logistics in 2010. See, e.g., Chen, 8 F. Supp. 3d at 426, 428. At the time of the intervention, Ms. Chang was employed by New Trend and was not a party to this lawsuit. Id. at 428. Soon after Hana's intervention, the litigants agreed to attempt to sell certain inventory of New Trend, which by then had apparently stopped doing business as a result of a freeze order entered by the District Court at the

---

[4] This history has been reviewed in earlier decisions in greater detail than we propose to provide here. See, e.g., Chen, 8 F. Supp. 3d at 423-27. We assume the reader's general familiarity with that history.

6

outset of the case. Id. at 426-28. They further agreed that the proceeds of those sales would be escrowed pending resolution of the claims of the Chen plaintiffs and of Hana. Id. at 427-28. At the same time the New Trend defendants stipulated (1) that the JCM loan and New Trend guarantee were in default and (2) that these liabilities were secured by Hana's "first priority security interest in New Trend's inventory" and future accounts receivable. See, e.g., id. at 427-28, 436, 454. (See also Sheppeard Decl. ¶ 27 & Ex. G at ¶ 5).

Sometime thereafter, evidence emerged suggesting that defendant Byunglim Louie and Ms. Chang had arranged to divert a portion of New Trend's inventory to Ms. Chang's newly established company, NYCG, for resale, an arrangement made with the apparent intention of surreptitiously earning moneys for their own respective uses. Chen, 8 F. Supp. 3d at 416, 426-27. The disclosure of this arrangement, made by Mrs. Louie to the other litigants, triggered emergency motion practice to freeze the business dealings of Ms. Chang and NYCG and to add both of them to the case as defendants, against whom both Hana and the Chen plaintiffs asserted claims. See, e.g., Chen, 8 F. Supp. 3d at 428-29; Chen v. New Trend Apparel, Inc., 2012 WL 612478, *1-2 (S.D.N.Y. Feb. 23, 2012), aff'd, 2012 WL 1592233 (S.D.N.Y. May 4, 2012). Since the

allegations in question reflected a diversion of assets belonging to New Trend, that defendant also asserted claims against Ms. Chang and NYCG, alleging non-payment for the transferred inventory. (See Answer dated Apr. 3, 2012 [docket no. 180]). It is these claims that are the subject of the proposed assignment from New Trend to the Chen plaintiffs.

In asserting that this assignment contravenes the anti-assignment provision of the factoring agreement, Hana appears to rely on the fact that the diverted inventory at issue was covered by the lien that Hana had obtained pursuant to the factoring agreement. Based on that apparently undisputed fact,[5] Hana argues that it follows that New Trend's assignment of the claims would amount to an assignment of the factoring agreement (or some part of it). (See, e.g., Mar. 4 letter to the Court from Michael J. Sheppeard, Esq.).

The difficulty with this argument is that it is not consistent with the contractual language invoked by Hana. The provision in question -- included in a form contract plainly drafted by Hana --

---

[5] We are not entirely certain whether counsel for the Chen plaintiffs disputes that fact, but his submission on this and other points is obscure, to say the least. (See Mar. 12 & 19, 2015 letters from Heng Wang, Esq.).

8

is framed as a prohibition on an unconsented-to assignment of the factoring agreement itself. (See id. at Ex. 1, § 11). This appears to amount to a protection for Hana based on the notion that it has the right to decide whether to enter into a factoring relationship with a given proposed client. The fact that it did so with New Trend does not mean that it would be willing to do so with some other company, and by virtue of the cited provision it is protected against the substitution of any other entity in place of New Trend as its client.

The assignment by New Trend of its claims against Ms. Chang and NYCG does not amount to its assignment of the factoring relationship with Hana. Indeed, the claims of New Trend for diversion of its inventory are based on the presumed fact that New Trend owned the inventory, even if it was secured for the benefit of Hana. That ownership interest was not a creation of the factoring agreement, although Hana's security interest in that inventory obviously dictates how the inventory or moneys derived from the inventory may be disposed of when judgments are finally entered in this case.

Hana's second argument in opposition to the assignment appears to rest on a more practical concern, that it may interfere with

Hana's ability to protect its senior interest in whatever assets New Trend may have or hereafter acquire. We conclude that this concern may be adequately addressed without necessarily precluding the ability of the Chen plaintiffs and the New Trend defendants to enter into a settlement of the claims between them, but that the current settlement documents do not do so.

The court has already determined that Hana has a superior interest in the inventory of the New Trend defendants, and a portion of that inventory allegedly ended up in the possession of Ms. Chang and NYCG. See, e.g., Chen, 8 F. Supp. 3d at 420-21. The claims of New Trend against those defendants is premised on the diversion of that very inventory, and it therefore follows that these assets -- whether in the form of clothing or funds realized by their sale -- are subject to Hana's lien. Hana's stated concern is that a naked assignment of New Trend's claims to the Chen plaintiffs may trigger an effort by those plaintiffs to realize on the claims in an attempted end-run around Hana'a secured interest. That concern is particularly valid in view of the fact that counsel for the Chen plaintiffs explicitly argues that the claims to be assigned to his clients are not subject to the Hana lien. (Mar. 12, 2015 letter from Heng Wang, Esq. at pp. 1-2; Mar. 19, 2015 letter

from Heng Wang, Esq. at pp. 1-2).[6]

The arguments of Chen's counsel on this point are plainly meritless and, indeed, verge on the incomprehensible. While we therefore reiterate that Hana's priority extends to the assets targeted by the New Trend defendants' claims against Ms. Chang and NYCG, that does not necessarily provide sufficient protection to Hana if the court were to sign the consent judgment, which incorporates the terms of the Assignment and thus, in effect, to approve the assignment. The consented-to terms of the settlement, as embodied in the settlement stipulation, the assignment of claims and the proposed consent judgment do not explicitly acknowledge Hana's priority, and the Chen plaintiffs clearly are taking the position that their settlement entitles them to pursue Ms. Chang and NYCG without regard to that priority.

Although the provisions of the consent judgment and the assignment of claims could be amended to provide such recognition

---

[6] Strikingly, counsel for the New Trend defendants, while seeking to justify his clients' deal with the Chen plaintiffs, takes exactly the opposite tack. Thus, he concedes that the Chen plaintiffs cannot avoid Hana's priority with respect to the diverted assets, and argues on that basis that Hana cannot be prejudiced by his clients' assignment of their claims to the Chen plaintiffs. (Mar. 12, 2015 letter to the Court from Samuel Weissman, Esq. at pp. 2-3; Weissman Decl. ¶¶ 19, 22-23).

11

of priority, it is not the role of the court to do so. These documents represent an agreement between certain of the litigants as to the terms on which they are willing to resolve the claims between them. Given the limitation of our role, the appropriate response by the court is to decline to approve the settlement as is, with the caveat that the litigants may, if they wish, amend the consent judgment and assignment to reflect the court's ruling as to priority.[7]

## CONCLUSION

For the reasons stated, we recommend that the court decline to sign the proposed Consent Judgment or otherwise approve the terms of the proposed settlement as currently reflected in the settlement documents. We further recommend that -- with discovery complete -- the court at this stage set the case for trial following submission of a joint pretrial order.

---

[7] Appropriate protection could be achieved, for example, by inserting in the consent judgment a provision stating: "The foregoing terms are subject to the past, and any future, rulings of the court with regard to the security interest of intervenor plaintiff Hana Financial." Again, however, since a proposed settlement cannot be forced on the litigants, it is their decision whether to proceed in this fashion.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 1310, 500 Pearl Street, New York, New York 10007-1312 and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated: New York, New York**
       **June 8, 2015**

_____
MICHAEL H. DOLINGER
**UNITED STATES MAGISTRATE JUDGE**

Notice provided to counsel via ECF.